UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAPITOL PAVING OF D.C., INC.,

*Plaintiff*,

v.

H&L CONSTRUCTION CORPORATION,

*Defendant*.

Case No. 1:24-cv-02148 (ACR)

## MEMORANDUM OPINION

Plaintiff Capitol Paving of D.C., Inc., is a D.C. corporation in the business of asphalt paving, restoration, and repair and installation of water and sewer lines. *See* Dkt. 1 (Compl.) ¶ 4. On July 23, 2024, Plaintiff sued H&L Construction Corporation, a Florida corporation, alleging a violation of the District of Columbia Prompt Pay Act, breach of contract, *quantum meruit*, and unjust enrichment. *Id*. at 1. Defendant failed to answer or appear in this case, so Plaintiff filed a motion for a default judgment on October 28, 2024. *See* Dkt. 12. After considering the relevant evidence submitted by Plaintiff, the Court **GRANTS** the motion in part and **DENIES** it as moot without prejudice in part, awarding compensatory damages, attorney's fees, and costs.[1]

### I.    BACKGROUND

Plaintiff brought this civil action based on a contract it made with Defendant, dated October 11, 2021, to remove and reinstall water and sewer lines at the Embassy of Hungary. *See*

---

[1] The Court, in granting judgment on Plaintiff's claims for violation of the D.C. Prompt Pay Act and breach of contract, need not address Plaintiff's claims for *quantum meruit* and unjust enrichment, which are pled in the alternative that an express contract was not made between the parties. Because the Court finds that an express contract did exist, it denies Plaintiff's alternative arguments as moot, without prejudice.

1

Compl., Ex. 1 (the Contract), and two change orders, dated December 6, 2021, and March 29, 2022, *see* Compl., Ex. 2 (the Change Orders) (together, the Project). Plaintiff began its work on on or about November 8, 2021, as a subcontractor for the Project under the request and direction of Defendant and with approval from the Hungarian Embassy. *See* Compl. ¶¶ 57, 13. Plaintiff provided all labor and materials necessary to complete the Project. *See id*. ¶ 5. It completed the project on or about June 30, 2022. *See id*. ¶ 6. The Embassy of Hungary then paid Defendant for Plaintiff's work. *See id*. ¶ 67. After numerous discussions between Plaintiff and Defendant, Defendant made two payments to Plaintiff: $40,000.00 on May 19, 2023, and an additional $40,000.00 on May 31, 2023. *See id.* ¶ 9. However, Defendant still owes Plaintiff $340,000.00 for Plaintiff's work on the Project pursuant to their contractual agreements. See *id*.; *see also* Compl., Ex. 3 (Statement of Account).

On July 23, 2024, Plaintiff filed its Complaint in this case. Compl. at 7. On August 6, 2024, Plaintiff successfully served Defendant in accordance with the Federal Rules of Civil Procedure. Dkt. 7. After Defendant failed to appear or otherwise respond to the Complaint, Plaintiff filed an affidavit for default on October 10, 2024, Dkt. 10, and the Clerk of the Court entered default on October 10, 2024, Dkt. 11. Plaintiff then filed a motion for default judgment on October 28, 2024. Dkt. 12.

Plaintiff requests that the Court award it with "[d]amages in an amount of not less than $340,000.00, plus interest as allowed by law and/or the Contract[,]" as well as "[a]ttorneys' fees and legal costs in an amount to be determined following entry of a final judgment" and "[a]ny other further relief this Court deems just and necessary." *See* Compl. at 7. Plaintiff submitted an affidavit in support of the compensatory damages it requests, which it calculated to be

$482,800.00. *See* Dkt. 12-1 at 1. Plaintiff also submitted an affidavit in support of attorney's fees and costs in the amounts of $11,150.00 and $537.04, respectively. *See* Dkt. 12-2 at 1.

## II.   STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide for the entry of a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a); *see also Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (cleaned up). Rule 55 sets forth a two-step process for a party seeking a default judgment: first, entry of a default by the clerk of the court, followed by entry of a default judgment by either the clerk or the Court. Fed. R. Civ. P. 55.

## III.   FINDINGS OF FACT

Plaintiff Capitol Paving of D.C., Inc., is a District of Columbia corporation with its "principal office" located in Washington, D.C. *See* Compl. ¶ 1. Defendant H&L Construction Corporation is a Florida corporation registered to do business in the District of Columbia with a "principal office" in Jacksonville, Florida. *Id*. ¶ 2. "On or around October 2021, [Defendant] retained [Plaintiff] to, *inter alia*, remove and reinstall water and sewer lines at the Embassy of Hungary." *Id*. ¶ 4; *see also* the Contract. "[Plaintiff] also performed work for [Defendant] pursuant to two (2) Change Orders[.]" *Id*.; *see also* the Change Orders. "[Plaintiff] began its work on the Project on or about November 8, 2021[,]" "provided and/or arranged for all labor and materials necessary to complete the Project[,]" *id*. ¶ 5, and "performed all work in furtherance of the Project in a professional and workmanlike manner, and pursuant to the terms and conditions of the Contract[.]" *Id*. ¶ 7. "[T]he services rendered by [Plaintiff] were approved and accepted by [Defendant], as well as the Hungarian Embassy." *Id*. The Project achieved

"Substantial Completion" in June 2022 with "final punch list work completed in July of 2022." *Id*. ¶ 6. "[Defendant] was paid for the work of [Plaintiff] by the Hungarian Embassy." *Id*.

While "[Defendant] made several payments to [Plaintiff] during the term of the Project[,]" *id*. ¶ 8, including "payments to [Plaintiff] on May 19, 2023 in the amount of $40,000.00 and May 31, 2023 for another $40,000.00[,]" *id*. ¶ 9; *see also id.* Ex. 3, the "total value of the services, labor, and materials supplied by [Plaintiff] for which it has not been compensated is $340,000.00." *Id*. ¶ 11. "[Defendant], through its Principal and Owner, Lajos Horvath, has acknowledged the outstanding debt owed to [Plaintiff], and has agreed to pay the outstanding amount owed to [Plaintiff]. Notwithstanding that fact, [Defendant] has failed and refused to pay [Plaintiff] for the services, labor, and materials supplied by [Plaintiff] in furtherance of the Project." *Id*. ¶ 10.

In support of its motion for a default judgment, Plaintiff has submitted evidence including records of the executed Contractor Agreement between Plaintiff and Defendant and records of the two Change Orders. *See* Compl., Exs. 1, 2. Plaintiff also attached a Customer Ledger for the Project that shows that Defendant owes Plaintiff an outstanding balance of $340,000.00. *See id.* at Ex. 3. Plaintiff further submitted an affidavit from Randy B. Panizo, Vice President of Capitol Paving of D.C., Inc., to substantiate the amount that Defendant owes Plaintiff as shown in the Statement of Account. *See* Dkt. 12-1.

## IV.   CONCLUSIONS OF LAW

Plaintiff requests that this Court enter "an Order in its favor and against Defendant" arising out of Defendant's alleged violation of the Prompt Pay Act, D.C. Code § 27A-104, breach of contract, *quantum meruit*, and unjust enrichment. *See* Compl. ¶ 36.

4

Before entering a default judgment, a court must comply with its "affirmative obligation to determine whether it has subject-matter jurisdiction over the action[,]" *Friends Christian High Sch. v. Geneva Fin. Consultants*, 321 F.R.D. 20, 22 (D.D.C. 2017) (internal quotation marks omitted), as well as personal jurisdiction over the Defendant, *see Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). After establishing jurisdiction over the action, the court must determine whether a plaintiff has sufficiently alleged facts establishing the defendant's liability. *See Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (noting that entry of a default "establishes the defaulting party's liability for the *well-pleaded allegations* of the complaint") (emphasis added).

### A. This Court Has Subject-Matter Jurisdiction

To proceed with a default judgment action, the Court must first determine whether it has subject-matter jurisdiction over Plaintiff's claims. 28 U.S.C. § 1332 establishes original jurisdiction for federal district courts in cases based on diversity of citizenship where the matter in controversy "exceeds the sum or value of $75,000" and is between "citizens of different States." 28 U.S.C. § 1332(a). Further, "a corporation shall be deemed to be a citizen of every [s]tate . . . by which it has been incorporated[.]" *Id*. § 1332(c)(1).

Here, Plaintiff is a "District of Columbia Corporation" with a "principal office" in Washington, D.C., Compl. ¶ 1, and Defendant "is a Florida Corporation with Florida Articles of Incorporation[.]" *Id*. ¶ 2. Therefore, Plaintiff is a citizen of the District of Columbia and Defendant is a citizen of Florida. Plaintiff requests $340,000.00 in damages "plus interest, as allowed by law and/or the Contract[,]" as well as "[a]ttorneys' fees and legal costs in an amount to be determined following entry of a final judgment[,]" and "[a]ny other further relief this Court deems just and necessary[,]" Compl. at 7, for total compensatory damages of $482,800.00 as

well as $11,150.00 and $537.04 in attorney's fees and costs, respectively. *See* Dkt. 12-1 at 1. The matter in controversy therefore exceeds the statutory requirement of a sum of $75,000. Accordingly, the Court concludes that it has subject-matter jurisdiction over the parties pursuant to 28 U.S.C. § 1332.

### B. This Court Has Personal Jurisdiction

In the case of default judgment, Plaintiff must raise a prima facie case of personal jurisdiction. *See Mwani*, 417 F.3d 1, 7 (D.C. Cir. 2005). To prove a prima facie case of personal jurisdiction, Plaintiff must establish that proper service was effectuated on Defendant. *See Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007). The Court must also determine whether jurisdiction is proper under the District of Columbia long-arm statute and whether the exercise of personal jurisdiction comports with the constitutional requirement of due process, *see Buholtz v. Sogamoso*, No. 17-cv-1766, 2019 WL 13225374, at *1 (D.D.C. Jan. 10, 2019).

First, Plaintiff properly served Defendant. "[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over Defendant." *Candido*, 242 F.R.D. 151, 160. A domestic corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).

Defendant is a domestic corporation incorporated in the state of Florida. As noted previously, Plaintiff served Defendant with a copy of the summons and complaint with exhibits. *See* Dkt. 7. As evidence that it properly served Defendant, Plaintiff submitted an affidavit of service from a paralegal authorized to accept service on behalf of Northwest Registered Agent

6

Service, Inc., who is the Registered Agent listed for Service for Defendant. *See* Dkt 7 at 1–2. Therefore, the Court concludes that Plaintiff properly effectuated service on Defendant pursuant to Rule 4(h)(1)(B).

Second, Plaintiff easily meets the requirements for personal jurisdiction. To establish personal jurisdiction over a non-resident defendant, courts in this District must "engage in a two-part inquiry," asking (1) whether jurisdiction is proper under the District of Columbia's long-arm statute and (2) whether the exercise of personal jurisdiction comports with the constitutional requirement of due process. *Buholtz*, No. 17-cv-1766, 2019 WL 13225374, at *1.

Section 13-423 of D.C.'s long-arm statute allows courts to exercise personal jurisdiction over out of state individuals based on their conduct in D.C. *See* D.C. Code Ann. § 13-423(a). Section 13-423(a)(1) allows a court to exercise personal jurisdiction over a claim that arises from a "person's transacting any business in the District of Columbia." *First Chicago Intern v. United Exch. Co.*, 836 F.2d 1375, 1377 (D.C. Cir. 1988) (cleaned up). The D.C. Circuit has explained that Section 13-423(a)(1)'s requirements are "coextensive with the Constitution's due process limit." *Id*. This means that the Court may exercise jurisdiction if "there is a sufficient relationship between the gravamen of the complaint . . . and the District of Columbia, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *McLaughlin v. Hartford Life & Annuity Ins. Co.*, 299 F. Supp. 3d 115, 118 (D.D.C. 2017) (cleaned up). Some factors that courts use to determine whether a defendant transacts business in D.C. include whether it "perform[s]" any "aspect" of its work or "solicits" work in D.C. *Env't Rsch. Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 811–12 (D.C. 1976).

The gravamen of the Complaint and accompanying record revolves around work that Plaintiff performed at or near the Hungarian Embassy, which is located in the District of

7

Columbia. It is also clear that Defendant solicited business in D.C. by the nature of the contract work it engaged in with Plaintiff. *See id.* The Court is therefore satisfied that personal jurisdiction over Defendant is proper under both D.C.'s long-arm statute and the Constitution.[2]

Accordingly, because this Court has established subject-matter jurisdiction over the instant action; that Plaintiff properly served Defendant pursuant to Rule 4(h)(1); that jurisdiction is proper under the District of Columbia's long-arm statute; and that jurisdiction in the instant case comports with constitutional due process, the has jurisdiction over Defendant.

### C. Plaintiff Has Sufficiently Pled that Defendant Is Liable for Plaintiff's Damages

Having concluded that the Court has subject-matter jurisdiction over Plaintiff's claims and personal jurisdiction over Defendant, the Court will now address whether Plaintiff has sufficiently alleged its claims to warrant a default judgment as to Defendant's liability.

Plaintiff has brought four claims against Defendant: (1) violation of the Prompt Pay Act, D.C. Code § 27A-104; (2) breach of contract; (3) *quantum meruit*; and (4) unjust enrichment. A defaulting defendant is "deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002). But a well-pleaded complaint must include enough factual matter to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff has established that it is entitled to a default judgment on the issue of Defendant's liability on count one, violation of the Prompt Pay Act, D.C. Code § 27A-104, and

---

[2] Venue is also proper in the District of Columbia. *See* Compl. ¶ 3. In any case, venue is "forfeitable and waivable," and Defendant "forfeited their right to contest venue by defaulting." *Henkin v. Islamic Republic of Iran*, No. 1:18-CV-1273-RCL, 2021 WL 2914036, at *18 (D.D.C. July 12, 2021). And the contract at issue did not contain a choice of venue provision. *See* Compl., Ex. 1.

count two, breach of contract. Given its conclusion on counts one and two, the Court concludes that counts three and four are moot.[3]

### 1. Violation of the Prompt Pay Act, D.C. Code § 27A-104

Plaintiff has successfully alleged facts to prove that Defendant has violated the D.C. Prompt Pay Act, D.C. Code § 27A-104. D.C. Code § 27A-104(a) provides that a contractor or subcontractor must pay its lower-tier subcontractor the undisputed amounts owed for the subcontractor's work or materials within seven days of receipt from the owner of any payment. A contractor's failure to pay a subcontractor (or a subcontractor's failure to pay another subcontractor) within the prescribed time results in an interest penalty of 1.5% per month or any part of a month applied to the undisputed amount unpaid. *Id.* § 27A-105(a). If the subcontractor prevails in a civil action to collect interest penalties, the subcontractor is also entitled to collect its costs incurred in bringing the civil action, including reasonable attorney's fees. *Id.* § 27A-105(b).

Here, Plaintiff is a "subcontractor" for the Project under the meaning of D.C. Code § 27A-104(a). *See* Compl. ¶ 13–14. As the Court has already found, Defendant, as the primary contractor for the Project: agreed to pay Plaintiff for the work of the Project; was indeed paid by the Hungarian Embassy for the work of Plaintiff; and then failed to pay Plaintiff the undisputed amount owed for the Project, which is now the principal sum of $340,000.00, within seven days of the due date stated in the invoices. *See* Compl. ¶ 15; *see also* Ex. 3. Based on the uncontroverted allegations and substantiating evidence that Plaintiff submitted along with the

---

[3] Because the events giving rise to this suit occurred in the District of Columbia, D.C.'s long-arm statute applies, and D.C. is Plaintiffs' preferred forum, the Court will assess the sufficiency of Plaintiffs' claims under D.C. law. The contract did not include a choice of law provision. *See* Compl., Ex. 1.

Complaint, the Court concludes that Plaintiff has sufficiently alleged that Defendant "has failed to pay [Plaintiff] the undisputed amount(s) owed for the Project" and has thus violated the Prompt Pay Act, D.C. Code § 27A-104.  *See* Compl. ¶¶ 15–16.  Defendant must therefore pay Plaintiff the undisputed amount plus interest of 1.5% per month on the undisputed amount, as well as costs and disbursements, including reasonable attorney's fees.

2. **Breach of Contract**

The Court also finds that Plaintiff has successfully alleged facts to prove that Defendant has breached its contract with Plaintiff.  To prevail on a claim of breach of contract in the District of Columbia, a party must establish "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach."  *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).

Plaintiff has established that it had entered into a valid contract with Defendant for the work compromising the Project.  *See* Compl. at Exs. 1, 2.  Plaintiff "performed services at the request and direction of [Defendant], and in a professional and workmanlike manner," and the "work was approved and accepted by [Defendant]."  Compl. ¶ 20.  Despite submitting "invoices for payment to [Defendant] for the work described in the invoices," and despite Defendant submitting partial payment to Plaintiff, *see* Compl., Ex. 3, Defendant failed to pay Plaintiff $340,000.00 for the work Plaintiff already performed.  *Id*. ¶¶ 21–23.  As such, Plaintiff "has sustained monetary damages totaling $340,000.00, excluding interest, costs, and attorney's fees."  *Id*. ¶ 24.  Therefore, the Court concludes that Plaintiff has sufficiently alleged facts that both Plaintiff and Defendant had entered into a valid contract; that Plaintiff had fully performed its obligations under the contract in a workmanlike and professional manner; that Defendant materially breached the contract by failing to pay Plaintiff in full for the services rendered; and

that Plaintiff suffered monetary damages totaling $340,000.00, excluding interest, costs, and attorney's fees.

### 3. *Quantum Meruit* and Unjust Enrichment Claims

Plaintiff's third and fourth causes of action are "Quantum Meruit" and "Unjust Enrichment," respectively.  Compl. ¶ 36.  The District of Columbia recognizes causes of action for unjust enrichment and *quantum meruit* as implied contract claims in which there is no express contract but contractual obligations are implied, either in fact (*quantum meruit*) or in law (unjust enrichment).  *See United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.,* 81 F.3d 240, 246–47 (D.C. Cir. 1996).  But when "the parties have a contract," the "court will not displace the terms of that contract and impose some other duties not chosen by the parties." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014) (cleaned up).

Some courts in this District have permitted parties to plead claims for unjust enrichment in the alternative.  *See, e.g., McWilliams Ballard, Inc. v. Broadway Mgmt. Co.,* 636 F.Supp.2d 1, 9 n.10 (D.D.C.2009); *Nevius v. Africa Inland Mission Int'l,* 511 F.Supp.2d 114, 122 n.6 (D.D.C. 2007).  However, the Court notes that, in the instant case, Plaintiff has attached a copy of the parties' agreements to the Complaint, which is uncontroverted evidence of an express written contract between Plaintiff and Defendant.  Therefore, "District of Columbia law requires that [Plaintiff] recover under a breach of contract theory."  *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C.  2010); *see also Dale Denton Real Estate, Inc. v. Fitzgerald,* 635 A.2d 925, 928 (D.C. 1993) ("There is no need to resort to a quasi-contract claim based on *quantum meruit* if a true contract was in existence at the time the services were performed."); *see also Schiff v. Am. Ass'n of Retired Pers.,* 697 A.2d 1193, 1194 (D.C. 1997) ( "[T]here can be no claim for unjust

enrichment when an express contract exists between the parties."). The Court concludes that Plaintiff's third and fourth claims are moot and dismisses them without prejudice.

### D. Damages

The Court now turns to Plaintiff's requested relief. While default establishes a silent defendant's liability, it "does not . . . establish liability for the amount of damage that Plaintiff claims." *Boland*, 763 F. Supp. 2d at 67. Courts are therefore "required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014) (cleaned up). The moving party "must prove its entitlement to the amount of monetary damages requested using detailed affidavits or documentary evidence on which the court may rely." *Id.* at 36 (cleaned up). Courts have "considerable latitude in determining the amount of damages." *Id.* (cleaned up).

#### 1. Compensatory Damages

Plaintiff alleges that it is entitled to $340,000.00, plus interest, because of Defendant's breach of contract and violation of the D.C. Prompt Pay Act, D.C. Code § 27A-104. The Court agrees. Plaintiff submitted evidence of the Contract and Change Orders, evidence of a Customer Leger detailing the payment invoices and dates that Plaintiff sent the payment invoices to Defendant and has provided an affidavit by its Vice-President confirming the amount that Defendant still owes Plaintiff. The Court is also satisfied that Defendant's failure to pay the contract resulted in monetary damage to Plaintiff. Defendant had the opportunity to counter these allegations, but it chose not to do so.

To support the calculation of interest on the principal amount, Plaintiff submitted an affidavit by Randy B. Panizo, Vice President of Capitol Paving of D.C., Inc., who has calculated the interest accrued from July 1, 2022, to October 31, 2024, to be $142,800.00. Added to the

$340,000 remaining from the contracted price, the total amount Defendant owes (without attorney's fees and costs) is $482,800.00. Accordingly, the Court grants Plaintiff's request for compensatory damages in the amount of $482,800.00.

2. **Attorney's Fees**

Plaintiff also seeks attorney's fees and costs pursuant to the D.C. Prompt Pay Act, D.C. Code § 27A-104. *See* Dkt. 12-1 at 13. Plaintiff filed an affidavit in support of attorney's fees and costs. *See* Dkt. 12-2. The total amount of attorney's fees and costs is buttressed by evidence in the affidavit that the amounts claimed, $11,150.00 in attorney's fees and $537.04 in costs, is reasonable and does not exceed the amount that Plaintiff has agreed to pay its counsel. *Id*. The Court concludes that these expenses are reasonable. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C.Cir.1993). Accordingly, the Court grants Plaintiff's request for attorney's fees and costs in the amounts of $11,150.00 and $537.04, respectively.

V.   **CONCLUSION**

For the foregoing reasons, the Court grants in part Plaintiff's Motion for Default Judgment, Dkt. 12, and awards the Plaintiff $482,800.00 in compensatory damages, $11,150.00 in attorney's fees, and $537.04 in costs, notwithstanding post judgment interest.

A separate order accompanies this memorandum opinion.

Date: April 17, 2025                                       _____
                                                           ANA C. REYES
                                                           United States District Judge